## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

MILICA MILOSEVIC, on behalf of herself
and all others similarly situated,

         Plaintiff,

vs.

TURK HAVA YOLLARI A.O., INC. (d/b/a
Turkish Airlines, a foreign corporation, and
TURKISH AIRLINES, INC., a New York
corporation,

         Defendant.

)
)
)
)
)   Case No.. 1:20-cv-3328
)
)
)
)   Honorable _____
)
)
)

### CLASS ACTION COMPLAINT AND JURY DEMAND

### INTRODUCTION

1.      Plaintiff MILICA MILOSEVIC ("Plaintiff"), by and through her counsel, file this Class Action Complaint against TURK HAVA YOLLARI A.O., INC. (d/b/a Turkish Airlines) and TURKISH AIRLINES, INC. (collectively "Defendants" or "Turkish Airlines"), on behalf of herself and on behalf of a class of similarly situated individuals, and alleges, upon personal knowledge as to her own actions, and upon investigation of counsel as to all other matters, as follows:

### NATURE OF THE ACTION

2.      The Covid-19 pandemic confronts Americans with one of the greatest health and economic crises in the history of our nation, threatening the lives and livelihoods of millions. Shared sacrifice and mutual responsibility have never been more important to navigate these uncertain times. Tens of millions have been forced to file for unemployment system in a matter of weeks, and pocketbooks are being stretched like never before. For individuals and businesses alike, the need for cash and liquidity has never been greater.

3.      Unfortunately, instead of honoring contractual obligations during this crisis, Defendants, through their operation of Turkish Airlines, have made the reprehensible decision to extract maximum capital from customers in order to pad their own balance sheets.  Turkish Airlines' innocent customers are now left holding the bag.

4.      With mounting flight cancellations and travel disruptions due to the Covid-19 pandemic, Defendants have refused to provide contractually guaranteed full cash refunds for cancelled flights, to which their passengers are entitled.

5.      Instead, Defendants have denied refunds and, at best, required Plaintiff and the Class to accept expiring flight coupons for use on their own airline. These coupons carry substantially less or no value to Plaintiff and the Class during this uncertain time.

6.      Defendants' uniform conduct is equally applicable to Plaintiff and the Class. Plaintiff brings this action against Defendants for breach of contract and to seek an order from this Court requiring Defendants to, among other things, (1) discontinue the illegal practice of issuing coupons in lieu of refunds to any Class Member who has not requested coupons, and (2) pay damages and/or restitution to Plaintiff and the Class for the full value paid to Defendants.

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2).  The amount in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which there are numerous class members who are citizens of states different from Defendants.  The number of members of the proposed class is in the aggregate greater than 100 and more than two-thirds of the class members reside in states other than the state in which Defendants are citizens.

8.      This Court has personal jurisdiction over Defendants because Defendants conduct

substantial business in New York, including entering into contracts with New York residents

acting in New York for flights and services provided to and from New York and a substantial

portion of the acts complained of through this action took place in New York.

9.      Venue is proper in the Southern District because Defendants conduct business in

this District and many of the events that gave rise to Plaintiff's claims occurred in this District.

## PARTIES

10.     Plaintiff Milica Milosevic is an individual and a citizen of Wyoming.

11.     Defendant Turk Hava Yollari A.O., Inc. is a foreign corporation with its principal

place of business located in Turkey, at Turkish Airlines General Management Building, Ataturk

Airport, Yesilkoy, IB 34149, Istanbul, Turkey.

12.     Defendant Turkish Airlines, Inc. is a New York corporation with its principal place

of business in Turkey.

## FACTUAL ALLEGATIONS

13.     Defendants operate and control Turkish Airlines, a private international air travel

service provider that ordinarily includes more than 300 destinations and service more than 75

million passengers annually in more than 120 countries, including the United States.

14.     Defendants' flight route network provides regular routes to 208 airports and

destinations in the United States, including major hubs like Atlanta, Boston, Chicago, Houston,

Los Angeles, Miami, New York, San Francisco, and Washington D.C.

15. These routes include flights arriving and departing from New York airports, including an average of three direct daily flights from Istanbul to New York, through the John F. Kennedy International Airport ("JFK").

16. Defendants offer and sell flight tickets directly to consumers, who make monetary payments to Defendants in exchange for a selected flight itinerary that conforms to consumers' specifically selected travel schedule.

17. Defendants collect passenger identification information as part of each ticket sale, including name, address, and telephone information, and each ticket purchased guarantees consumers a seat on a specific, scheduled flight departing at a specific time from a specific airport in exchange for monetary payment.

18. As part of the contract that governs each ticket purchase, Defendants made a specific promise and warranty to consumers that in the event of a flight cancellation consumers are entitled to a full cash refund for the unused portion of the purchased flight, in the same amount paid for the flight which did not occur as scheduled.

19. Article 11.1 of Defendants' General Conditions of Carriage promises refunds to passengers who experience involuntary cancellations or other interruptions to their travel itinerary. Article 11.1 states that "[u]pon failure by the Carrier to provide carriage in accordance with the contract of carriage … refund for an unused Ticket or portion thereof shall be issued by the Carrier in accordance with this article and the Carrier's Regulations."

20. In relevant portion, Defendants General Conditions of Carriage, Section 11.2, states that, "the Carrier shall be entitled to issue a refund" to either the person who is named on the applicable flight ticket or the person who has paid for that ticket.

21.    Defendants General Conditions of Carriage, Section 11.3, states that, "if the Carrier cancels a flight, fails to operate a flight reasonably according to schedule, fails to stop at a point at which the Passenger is ticketed to stopover or is their destination, is unable to provide previously confirmed space, or causes the Passenger to miss a connecting flight for which the Passenger holds a reservation, the amount to be refunded shall be:

11.3.1 If no portion of the Ticket has been used, an amount equal to the fare paid;

11.3.2 If a portion of the Ticket has been used, the refund will be the higher of either:

11.3.2.1 The one-way fare (less applicable discounts and charges) from the point of interruption to the destination or point of next Stopover; or

11.3.2.2 The difference between the paid Ticket fare and the fare for the transportation used."

22.    Prior to the Covid-19 crisis, Defendants generally honored cancellation promises and warranties to notify and provide consumers with a full refund for all cancelled flights.

### *Defendants' Disgraceful Response to the Covid-19 Pandemic*

23.    On January 30, 2020, the World Health Organization declared the Covid-19 virus a public health emergency of international concern.

24.    As of late-February, Covid-19 confirmed cases in the United States were detected and exponentially increasing, including cases that were not caused by recent international travel but through community spread.

25.    On March 11, 2020, the WHO officially declared Covid-19 a global pandemic.

26.     By March, it was abundantly clear that the United States was going to be hit hard by the rapidly spreading Covid-19 pandemic and that dramatic changes to ordinary consumer behavior, including widespread discontinuation of non-essential travel and congregating in enclosed spaces (like airports and airplanes), were imminent.

27.     Across the United States, state and local governments began issuing shelter-in-place orders that specifically prohibited non-essential travel, specifically including air travel because of the extraordinary risk that air travel presented to the ability to strictly adhere to social distancing standards and avoid inter-community, inter-state, and international travel—all of which threatened to dramatically increase the spread of the virus.

28.     The U.S. Government issued social distancing guidelines that further warned of the substantial risks of human-to-human and community spread of the virus, and air travel was clearly discouraged.

29.     It was entirely known and foreseeable to Defendants that many of their previously scheduled flights would need to be cancelled in order to protect the public from a catastrophic infection spread and loss of life and respond to the dramatically decreased demand for air travel.

30.     Yet, Defendants quietly began changing their longstanding policy, in violation of its own General Conditions of Carriage, to provide full cash refunds for cancelled flights and other failures to provide carriage as promised. Instead, Defendants began to offer some ticketholders only redeemable credits for future use on their own airline.

31.     Further, Defendants set expiration dates on the future credits, permitting the company to receive a windfall because many consumers would not redeem the credits.

32.     The practice of offering credits is especially wrongful and inadequate during the

Covid-19 epidemic because it remains entirely unclear when air travel, particularly international

travel, will once again be safe and readily available.

33.     The future flight credits provide Defendants additional opportunities to charge

service, processing, baggage, and other fees that will ensure Defendants additional future profits—

while retaining Plaintiff's cash in the interim—substantially diminishing value for Plaintiff and

the putative class.

34.     Recognizing the abuse by Defendants and other airline companies, the United

States Department of Transportation ("DOT") was forced to step in to remind Defendants that they

remain under an obligation to notify consumers regarding their rights to a refund for a cancelled

flight resulting from the Covid-19 pandemic.

35.     On April 3, 2020, the DOT issued a notice to remind carriers that, "passengers

should be refunded promptly when their scheduled flights are cancelled or significantly delayed."[1]

The notice stated that "[a]lthough the COVID-19 public health emergency has had an

unprecedented impact on air travel, *the airlines' obligation to refund passengers for cancelled or*

*significantly delayed flights remains unchanged*." (Emphasis added).

36.     The DOT notice continued that:

> [t]he Department is receiving an increasing number of complaints and inquiries
> from ticketed passengers, including many with non-refundable tickets, who
> describe having been denied refunds for flights that were cancelled or significantly
> delayed. In many of these cases, the passengers stated that the carrier informed
> them that they would receive vouchers or credits for future travel. But many airlines
> are dramatically reducing their travel schedules in the wake of the COVID-19
> public health emergency. As a result, passengers are left with cancelled or

---

[1] https://www.transportation.gov/sites/dot.gov/files/2020-
04/Enforcement%20Notice%20Final%20April%203%202020_0.pdf (last visited April 24,
2020).

significantly delayed flights and vouchers and credits for future travel that are not readily usable. Carriers have a longstanding obligation to provide a prompt refund to a ticketed passenger when the carrier cancels the passenger's flight or makes a significant change in the flight schedule and the passenger chooses not to accept the alternative offered by the carrier.1 The longstanding obligation of carriers to provide refunds for flights that carriers cancel or significantly delay does not cease when the flight disruptions are outside of the carrier's control (e.g., a result of government restrictions).2 The focus is not on whether the flight disruptions are within or outside the carrier's control, but rather on the fact that the cancellation is through no fault of the passenger. Accordingly, the Department continues to view any contract of carriage provision or airline policy that purports to deny refunds to passengers when the carrier cancels a flight, makes a significant schedule change, or significantly delays a flight to be a violation of the carriers' obligation that could subject the carrier to an enforcement action.

…

Specifically, the Aviation Enforcement Office will refrain from pursuing an enforcement action against a carrier that provided passengers vouchers for future travel in lieu of refunds for cancelled or significantly delayed flights during the COVID-19 public health emergency so long as: (1) the carrier contacts, in a timely manner, the passengers provided vouchers for flights that the carrier cancelled or significantly delayed to notify those passengers that they have the option of a refund; (2) the carrier updates its refund policies and contract of carriage provisions to make clear that it provides refunds to passengers if the carrier cancels a flight or makes a significant schedule change; and (3) the carrier reviews with its personnel, including reservationists, ticket counter agents, refund personnel, and other customer service professionals, the circumstances under which refunds should be made.

37.    Further, 49 U.S.C. 41712 prohibits unfair or deceptive practices in the air carrier industry and "since at least the time of an Industry Letter of July 15, 1996 … the [DOT's] Aviation Enforcement Office has advised carriers that refusing to refund a non-refundable fare when a flight is cancelled and the passenger wishes to cancel is a violation" of that section.  Enhancing Airline Passenger Protections, 76 Fed. Reg. 23110-01, 23129.

38.    Defendants have failed to conform to the April 3, 2020 DOT Notice and 49 U.S.C. 41712.

39.    Defendants have deprived Plaintiff and the Class of the refunds to which they are entitled by (1) failing to provide promised refunds to their credit or debit cards; (2) automatically

issuing devalued coupons or vouchers in place of refunds; (3) rendering it functionally impossible to specifically request and obtain refunds over vouchers/coupons due to inaccessibility of customer service, with wait times of several hours frequently reported; and/or (4) obscuring passengers' right to a monetary refund.

40.     Upon information and belief, Defendants have delayed the formal classification of a flight as "cancelled" long after it knew those flights could not operate in the hopes that passengers would cancel before it did, and therefore Defendants would be able to attempt to treat those passengers' tickets differently than those of customers who retained the tickets until the flight was classified as "cancelled."

41.     Upon information and belief, Defendants further intentionally erected barriers for passengers it knew were, or should have been, entitled to a refund to obtain them, forcing people to accept only future credits by rendering it impossible or exceptionally difficult to process the rightful refunds.

42.     To the extent that it can be argued that Defendants' terms purport to require any affirmative action on the part of any passenger to choose a monetary refund over an automatic coupon or voucher, which by their terms they do not, such requirement is void as contrary to law and public policy.

### *Plaintiff's Use of Defendants' Services*

#### **Milica Milosevic**

43.     Plaintiff Milica Milosevic purchased tickets directly from Turkish Airlines for a scheduled flight on March 21, 2020 departing from Serbia to New York's JFK International Airport.

44.     Plaintiff paid approximately $790 for the ticket.

45.      Defendants cancelled Plaintiff's flight, which entitled her to an involuntary refund in accordance with Defendants' General Conditions of Carriage.

46.      Defendants refused to provide Plaintiff with a refund in an amount equal to the fare paid, and Defendants have refused to offer her a credit or flight voucher of any value.

47.      Plaintiff Milosevic has suffered damages as a result of Defendants conduct.

## CLASS ALLEGATIONS

48.      Plaintiff brings this class action under Rule 23 and seek certification of the claims and issues in this action pursuant to the applicable provisions of Rule 23.  The proposed class is defined as:

> All persons residing in the United States or its territories who purchased tickets for travel on a Turkish Airlines flight scheduled to operate from March 1, 2020 through the date of a class certification order, whose flight(s) were canceled by Defendants, and who were not provided a refund in an amount equal to the fare paid, including service charges and fees. Excluded from the Class are (a) any person who has specifically requested a coupon or voucher in lieu of a refund; (b) any person who requested and received alternative air transportation in lieu of a refund; (c) all persons who are employees, directors, officers, and agents of either Defendants; (d) governmental entities; and (e) the Court, the Court's immediate family, and Court staff.

49.      Plaintiff reserves the right to amend or modify the Class definitions with greater specificity or division into subclasses after having had an opportunity to conduct discovery.

50.      Numerosity.  Fed. R. Civ. P. 23(a)(1).  Defendants carries over 75 million passengers per year on tens of thousands of normally scheduled of flights. A significant percentage of those flights have been cancelled during the class period. At a minimum, there are tens of thousands of Class Members but very likely many more. The exact size of the proposed class and the identity of all class members can be readily ascertained from Defendants' records.

51.     Commonality.  Fed. R. Civ. P. 23(a)(2) and (b)(3).  There are questions of law and fact common to the class, which questions predominate over any questions affecting only individual class members.  Common issues include:

A.     Whether Defendants formed contracts with its passengers in selling them tickets for air travel;

B.     Whether Defendants' conduct breaches the terms of its contracts with its passengers;

C.     Whether Defendants are required to provide a refund, rather than an expiring coupon/voucher, to passengers for cancelled flights.

D.     The nature of the relief, including equitable relief, to which Plaintiff and the class are entitled.

52.     Typicality.  Fed. R. Civ. P. 23(a)(3).  Plaintiff's claims are typical of the claims of the Class she seeks to represent.  Plaintiff and all Class members were exposed to substantially similar contracts, breaches, and sustained injuries arising out of and caused by Defendants' uniform and unlawful conduct.

53.     Adequacy of Representation.  Fed. R. Civ. P. 23(a)(4).  Plaintiff will fairly and adequately represent and protect the interests of the members of the Class.  Further, Plaintiff's counsel is competent and experienced in litigating class actions.

54.     Superiority.  Fed. R. Civ. P. 23(b)(3).  A class action is superior to any other available means for the fair and efficient adjudication of this controversy.  The claims of Plaintiff and individual class members are small compared to the burden and expense that would be required to separately litigate their claims against Defendants, and it would be impracticable for class members to seek redress individually.  Litigating claims individually would also be wasteful to the resources of the parties and the judicial system and create the possibility of inconsistent or contradictory judgments.  Class treatment provides manageable judicial treatment which will bring

11

an orderly and efficient conclusion to all claims arising from Defendants' misconduct. Class

certification is therefore appropriate under Rule 23(b)(3).

55.     Class certification is also appropriate under Rule 23(b)(1), as the prosecution of

separate actions by individual members of the class would create the risk of adjudications with

respect to individual class members that would, as a practical matter, be dispositive of the interests

of other members not parties to the adjudication and substantially impair their ability to protect

those interests.

56.     Class certification is also appropriate under Rule 23(b)(2), as Defendants have

acted and/or refused to act on grounds generally applicable to the class, thereby making final

injunctive relief or corresponding declaratory relief appropriate for the class.

## FIRST CAUSE OF ACTION

### Breach of Contract

57.     Plaintiff incorporates all factual allegations in the Complaint by reference as if fully

set forth herein.

58.     A contract was formed between Plaintiff and Class Members on the one hand and

Defendants on the other with respect to the purchase of airfare tickets.

59.     The contract was offered by Defendants and formed at the time Plaintiff and the

Class accepted it by purchasing their tickets.

60.     The contract that governs the transactions at issue in this case requires refunds for

cancelled flights where the passenger does not elect to take substitute transportation.

61.     Plaintiff and the Class performed their obligations under the contract by rendering

payment.

62.     Defendants breached the contract when they refused to provide Plaintiff a refund and/or sought to instead provide coupons or vouchers in lieu of refunds for passengers on cancelled and other materially interrupted flights.

63.     Defendants' breaches were willful and not the result of mistake or inadvertence.

64.     As a result of Defendants' breach, Plaintiff and other Class members have been damaged in an amount to be determined at trial.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and the class of similarly situated individuals, requests the Court to:

(a)     Certify the case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, designate Plaintiff as representative of the class and designate counsel of record as class counsel;

(b)     Order Defendants to provide actual damages and equitable monetary relief (including restitution) to Plaintiff and class members and/or order Defendants to disgorge profits they realized as a result of their unlawful conduct;

(c)     Order Defendants to pay punitive damages, as allowable by law, to Plaintiff and class members;

(d)     Declare Defendants' conduct unlawful and enter an order enjoining Defendants from continuing to engage in the conduct alleged herein;

(e)     For both pre and post-judgment interest at the maximum allowable rate on any amounts awarded;

(f)     For costs of the proceedings herein;

(g)     For reasonable attorneys' fees as allowed by law; and

(h)     Award such other relief as the Court deems appropriate under the circumstances.

## JURY DEMAND

13

Plaintiff, on behalf of herself and the Class of all others similarly situated, hereby demands

a trial by jury on all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.


DATED:  April 28, 2020                                     Respectfully submitted,


                                                           **LIDDLE & DUBIN, P.C.**

                                                           s/ Nicholas A. Coulson

                                                           David R. Dubin (PHV Forthcoming)
                                                           ddubin@ldclassaction.com
                                                           Nicholas A. Coulson (PHV Forthcoming)
                                                           ncoulson@ldclassaction.com
                                                           975 E. Jefferson Avenue
                                                           Detroit, Michigan 48207

                                                           Tel: 313-392-0015
                                                           Fax: 313-392-0025

                                                           *Attorneys for Plaintiff and the*
                                                           *Putative Class*